UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA


- - - - - - - - - - - - - -

UNITED STATES OF AMERICA

v.                                    Docket No. 7:18-CR-133-FL-1

DORA DAMATTA-RODRIGUEZ            New Bern, North Carolina
                                 December 13, 2018
- - - - - - - - - - - - - -



**TRANSCRIPT OF ARRAIGNMENT AND PLEA PROCEEDINGS
BEFORE HONORABLE ROBERT B. JONES, JR., UNITED STATES
MAGISTRATE JUDGE, UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NORTH CAROLINA**


APPEARANCES:

For the Government:    James J. Kurosad, Esq.
                       Assistant United States Attorney
                       Office of the United States Attorney
                       310 New Bern Avenue
                       Suite 800
                       Raleigh, NC  27601


For the Defendant:     Stephen Gordon, Esq.
                       Assistant Federal Public Defender
                       Office of the Federal Public Defender
                       150 Fayetteville Avenue, Suite 450
                       Raleigh, NC 27601


Court Reporter:        Harold M. Hagopian, RDR, CRR
                       Contract Court Reporter
                       United States District Court
                       Eastern District of North Carolina



Proceedings recorded by mechanical stenography,
Transcript produced by Computer-Assisted Transcription

**PROCEEDINGS**

1

2      (The following proceedings were held in open court at

3  the United States Courthouse, 413 Middle Street, New Bern,

4  North Carolina, before the Honorable Robert B. Jones, Jr.,

5  United States Magistrate Judge for the Eastern District of

6  North Carolina, on December 13, 2018, at 1:36 p.m.)

7      (The Assistant United States Attorney James J.

8  Kurosad, Esq., is present for the government.  Assistant

9  Federal Public Defender Stephen Gordon is present with the

10  defendant.)

11                          *      *      *

12          THE COURT:  Good afternoon, ladies and

13  gentlemen.  I'm United States Magistrate Judge Robert

14  Jones.  We are here today in the United States District

15  Court for the Eastern District of North Carolina for

16  arraignments in felony criminal cases.

17      At this time I'll ask the Clerk to call the calendar

18  and counsel to advise of the status of each case called, as

19  well as the anticipate plea in these cases going forward

20  this afternoon.

21          THE CLERK:  The Court calls the following cases

22  for arraignment:

23      (Unrelated matters called.)

24                          *      *      *

25          THE CLERK:  United States of America versus Dora

1  Damatta-Rodriguez.

2          MR. GORDON:  Good afternoon, your Honor.

3  Stephen Gordon for Dora Damatta-Rodriguez.  We anticipate a

4  guilty plea pursuant to a plea agreement.

5          THE COURT:  Thank you.

6      (Further unrelated matters called.)

7                      *    *    *

8          THE COURT:  All right.  I ask each defendant

9  appearing before the Court this afternoon to listen

10  carefully to the following information.  This information

11  will be an important part of your case.  You may be called

12  upon this afternoon to make decisions in your cases based

13  on the following:

14      Now, you are here because a bill of indictment has

15  been returned against you by the grand jury or the U.S.

16  Attorney has filed a criminal information charging you with

17  the violation of one or more federal criminal laws.

18      You have certain rights as relate to these charges

19  and I'm going to explain those rights to you.

20      As explained to you at your initial appearance, you

21  have the right to remain silent.

22      You have the right to be represented by an attorney,

23  and, if necessary, to have the Court appoint an attorney to

24  represent you in your case, including in a trial.

25      You have the right to a trial by jury.  In such a

trial you are presumed to be innocent.  You do not have to

prove anything.  Instead, the burden is upon the

government, through its attorneys and agents, to prove you

guilty by competent evidence and beyond a reasonable doubt.

The method for the government to do this is to call

its witnesses, who would testify under oath in front of

you, in front of a jury, and in front of the presiding

district judge.  You, through your lawyer, will then have

the right to cross-examine those witnesses and to object to

any evidence you deem to be legally improper.

You also have the right to use the subpoena power of

this Court to bring to court witnesses who may be favorable

to you and to have these witnesses testify under oath.

You also may elect to take the witness stand and

testify under oath, but only if you wish to do so.  No one

can force you to take the witness stand to testify if you

don't want to.  If you choose not to testify, the fact that

you do not testify could not be held against you, and the

district court judge will instruct the jury accordingly.

If you plead guilty to an offense this afternoon, you

will waive your right to a trial by jury and the rights

that I've just mentioned, other than your right to an

attorney.  You also would have to waive your right not to

incriminate yourself, because I cannot accept your plea of

guilty as to a particular offense or offenses unless you

1    admit in open court your guilt as to that particular

2    offense or offenses.

3         By pleading guilty to a felony offense or being

4    convicted by a jury and adjudicated guilty of a felony

5    offense, you may lose certain valuable civil rights, such

6    as the right to possess any kind of firearm, the right to

7    serve on a jury, to right to hold public office, and the

8    right to vote.

9         If you plead guilty or are found guilty at trial, you

10   may be ordered to make restitution in money or services to

11   the victims of your crime if they are identifiable.

12        In certain cases, you may be required to forfeit

13   property to the United States government.

14        If your offense involves fraud, you may be required

15   to provide notice of your conviction to the victims of your

16   crime.

17        In addition, if you are not a United States citizen,

18   your immigration status may be adversely affected and you

19   may be subject to deportation, exclusion or voluntary

20   departure and prevented from obtaining U.S. citizenship.

21        (Baby in gallery screaming loudly.)

22        Ma'am, which case are you here for?  Ma'am, which

23   case are you here for?

24        Hello?  Which case are you here for?

25             SPECTATOR:  Francis Thompson.

1       (Baby continuing to scream loudly.)

2           THE COURT:  All right.  I'll call his case

3    first.  I'll call his case first.  So, just step out while

4    I'm going through the advice of rights.

5           (Baby continues screaming.)

6       I've been there.  When we call Mr. Thompson's case,

7    let her know so she can come back in.

8           THE MARSHAL:  Yes, sir, Judge, we will.

9          (Spectator and baby withdrew from the courtroom.)

10          THE COURT:  All right, if you are charged with a

11   sex crime, a conviction may result in substantial future

12   restrictions on where you may live or work and with whom

13   you may associate.  In addition, at the conclusion of any

14   sentence that is imposed, you may be subject to civil

15   commitment as a sexually dangerous person.

16      As required by the law, a special assessment or

17   monetary amount of $100 for each felony offense or count to

18   which you plead guilty or are found guilty at trial will be

19   imposed against you.  This special assessment of $100 per

20   count will be in addition to and on top of any fine that

21   may also be imposed.

22      You may be given a term of supervised release

23   following any actual term of incarceration that is imposed.

24   Supervised release is similar to what you may know as

25   probation.

1    The term of supervised release in each individual

2 case can range anywhere from one year up to life, based

3 upon your individual criminal history and the offense.

4 Supervised release would require you to report to your

5 assigned probation officer from time to time and to comply

6 with any Court-imposed or directed instructions.  If you

7 violate the supervised release conditions, you may be

8 required to serve an additional time of incarceration.

9    The United States Sentencing Commission has

10 established advisory guideline ranges for all federal

11 crimes.  Although the district judge is no longer required

12 to specifically follow the guideline in sentencing you, he

13 or she is required to calculate the advisory guideline for

14 your offense or offenses.  The district judge will then

15 consider that guideline range, as well as other relevant

16 factors that are set forth in 18 U.S. Code, Section

17 3553(a), before imposing a sentence.

18    The district judge has the authority in some

19 circumstances to depart upward or downward from that

20 advisory guideline range and will also examine other

21 factors under 18 U.S. Code, Section 3553(a), that may

22 result in a sentence that can be greater or lesser than the

23 advisory guideline sentence.

24    If the district judge imposes a sentence outside the

25 guideline range, he or she is required to explain on the

record at the time of sentencing his or her reasons for
imposing a sentence outside the guidelines.

Under some circumstances, you may have the right to
appeal your sentence, even though you've pled guilty to the
underlying crime; however, if you have waived the right to
appeal your sentence in a plea agreement with the United
States, that agreement may be binding upon you.

You should understand that parole has been abolished
in the United States court system, so if you receive a
sentence which includes an active term of incarceration,
you will not receive parole.

Regarding plea agreements, you should know that the
Court is not a party to a plea agreement and does not
participate in plea-agreement negotiations.  However, the
Court is obligated to examine carefully any plea agreement
with the government to ensure that the agreement conforms
to the objectives of sentencing.  The standards of
acceptance of plea agreements include those stated in Rule
11 of the Federal Rules of Criminal Procedure, which
provides, in part, as follows:

In one type of a plea agreement the government
recommends to the Court or agrees not to oppose the
defendant's request to the Court that a particular sentence
or sentencing range is appropriate or that a particular
provision of the guidelines does or does not apply.  If a

1  plea agreement is of this type, if the Court accepts the

2  plea agreement, the recommendation or request is not

3  binding on the Court.

4       If the Court does not follow the recommendation or

5  request, the defendant has no right to withdraw his or her

6  guilty plea.

7       On the other hand, there may be plea agreements in

8  which the government agrees not to bring or will move to

9  dismiss other charges or which the government agrees that a

10 specific sentence or sentencing range is an appropriate

11 disposition of the case or that a particular provision of

12 the guidelines does or does not apply.

13      If a plea agreement is of this type, if the Court

14 accepts the agreement, then the parties' agreed-upon terms

15 are binding on the Court and the agreed-upon disposition

16 will be included in the judgment, unless the agreement

17 provides otherwise.

18      However, if the Court does not accept this type of an

19 agreement where there is a binding agreed-upon disposition

20 between the parties, the defendant will be given an

21 opportunity to withdraw his or her plea.  If the defendant

22 does not withdraw the plea agreement, the Court is not

23 required to follow the plea agreement and may dispose of

24 the case less favorably than the plea agreement

25 contemplated.

1      A written presentence report will be prepared by the

2  Probation Office to assist the district judge in

3  sentencing.  You will be asked to give information for this

4  report, and you are entitled to have your attorney present

5  during the interview.

6      It is important that the presentence report be

7  accurate, because it will likely determine your punishment

8  range.  After that report has been prepared, you and your

9  attorney will have an opportunity to review the report and

10  to object to any aspects of the report that you believe are

11  inaccurate.

12      Any objections to the presentence report must be made

13  in writing and on a timely basis.  If you do not contest

14  the facts that are set forth in the presentence report and

15  the Court's independent findings coincide with those facts,

16  those facts will be accepted by the Court as correct and

17  will be relied upon in determining the guidelines

18  applicable to your case.

19      If a party seeks to argue for a sentence which varies

20  from the sentencing guidelines, that party shall file

21  written briefing in support of that position and serve a

22  courtesy copy on the probation officer who drafted the

23  presentence report.

24      At the time of sentencing you and your attorney will

25  be given the chance to speak to the Court and to argue for

1  a sentence that you and your attorney feels appropriate

2  under 18 U.S. Code, Section 3553(a).

3      While Judge Flanagan does not allow oral testimony in

4  the nature of character evidence at the sentencing hearing,

5  she will be happy to receive from your attorney written

6  sentencing briefing and character letters, all of which

7  should be provided to the Court so that they are received

8  at least seven days before the day you are scheduled to be

9  sentenced.

10      Finally, if there are any victims of the offenses for

11  which you are to be sentenced, these victims will be given

12  a chance to be heard at that sentencing hearing.

13      That concludes the explanation of your rights.  Those

14  cases in which a plea of guilty is entered today will be

15  scheduled for a sentencing hearing to be held no sooner

16  than 90 days from today before Judge Flanagan.  It is

17  anticipated that those cases will be set for the April,

18  2019, term.

19      Any case in which a plea of not guilty is entered

20  will have an administrative telephonic conference with the

21  Court.  Counsel in those parties will be contacted by the

22  Court to set up a date and a time of the conference, as

23  well as to provide counsel with the dialing instructions to

24  participate in that conference.

25      All right.  Each defendant appearing today should

know that as I take up your case to hear your plea and to address you personally, that you will be placed under oath, and if you should answer any of my questions falsely that your answers may later be used against you in another prosecution for perjury or making a false statement.

All right. To the Assistant U.S. Attorneys here, are there any victims of any cases that are going forward this afternoon? If so, have they been notified, and do they wish to be heard during this afternoon's session?

MR. KUROSAD: Good afternoon, your Honor. Jim Kurosad on behalf of the government. As far as I know, there is only one case that has victims, and that's the Fields case. Those victims have been notified and have chosen not to attend to appear here today.

THE COURT: Okay. Let's start with Mr. Thompson's case, and if one of the folks would alert her to be back in here if she wishes to do so.

(Unrelated matters heard by the Court.)

*     *     *

THE CLERK: The Court calls the case of the United States of America versus Dora Damatta-Rodriguez, Court Filing 7:18-CR-133-FL, Defendant 1.

Ms. Damatta-Rodriguez, if you would please stand and raise your right hand. I'm going to place you under oath.

**DORA DAMATTA-RODRIGUEZ**, having been duly affirmed by

1  the Clerk, was examined and testified as follows:

2          THE COURT:  Do I refer to you as Ms. Damatta or

3  Ms. Damatta-Rodriguez?  Which do you prefer?

4          THE DEFENDANT:  I've always used Damatta.

5          THE COURT:  Okay.  Ms. Damatta, I have in my

6  hands here a document in your case.  This document is

7  entitled Consent to Proceed Before Magistrate Judge.  It

8  appears to be signed by you, as well as Mr. Gordon, your

9  attorney in this case.

10      Did you sign this document, ma'am?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  And is it your knowing and voluntary

13  desire that for the purpose of conducting your arraignment

14  and taking your plea this afternoon that I may conduct

15  these proceedings as a United States Magistrate Judge?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  All right.  Thank you.

18      All right, Ms. Damatta, ma'am, do you understand that

19  you are now under oath and that if you answer any of my

20  questions falsely that your answers may later be used

21  against you in another prosecution for perjury or making a

22  false statement?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  What is your full name?

25          THE DEFENDANT:  Dora Damatta.

```
 1              THE COURT:  And how old are you?

 2              THE DEFENDANT:  Sixty-four.

 3              THE COURT:  And how far have you gone in school?

 4              THE DEFENDANT:  Bachelor's Degree.

 5              THE COURT:  Are you able to speak and understand

 6   English?

 7              THE DEFENDANT:  Yes.

 8              THE COURT:  Are you able to read?

 9              THE DEFENDANT:  Yes, your Honor.

10              THE COURT:  Are you currently or have you

11   recently been under the care of a physician or psychiatrist

12   or been hospitalized or treated for narcotics addiction?

13              THE DEFENDANT:  Never, your Honor.

14              THE COURT:  I'm sorry?

15              THE DEFENDANT:  Never.

16              THE COURT:  Okay.  Have you taken any drugs, any

17   medicine, any pills or had any alcoholic beverages in the

18   past 24 hours?

19              THE DEFENDANT:  No, your Honor.

20              THE COURT:  Have you been provided with a copy

21   of the two charges that are filed against you in this case?

22              THE DEFENDANT:  Yes, your Honor.

23              THE COURT:  And have you discussed those charges

24   fully, as well as your case in general, with your attorney?

25              THE DEFENDANT:  Yes, your Honor.
```

1          THE COURT:  Do you understand the charges

2   against you in this case?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Do you understand happening this

5   afternoon?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Okay.  Mr. Gordon, have you had any

8   difficulty in communicating with Ms. Damatta or any reason

9   to doubt her mental competency in this case?

10          MR. GORDON:  I have not, your Honor.

11          THE COURT:   Okay.  Does the United States have

12   any reason to doubt Ms. Damatta's mental competency in this

13   case?

14          MR. KUROSAD:  No, your Honor.

15          THE COURT:  All right.  The Court finds as a

16   fact that the defendant, Dora Damatta, is competent to

17   appear and to understand the nature of these proceedings

18   and to ultimately plead in these matters.

19        Now, Ms. Damatta, ma'am, have you had the time to,

20   and have you, in fact, discussed your case with your

21   attorney?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Are you satisfied with Mr. Gordon's

24   advice and counsel to you in this matter?

25          THE DEFENDANT:  I am.

1           THE COURT:  Did you hear and understand my

2  explanation of your rights this afternoon?

3           THE DEFENDANT:  Yes, your Honor.

4           THE COURT:  Did you understand my general

5  explanation of how you might be sentenced in this case?

6           THE DEFENDANT:  Yes, your Honor.

7           THE COURT:  And did you receive a copy of the

8  indictment in this case charging you in two counts?

9           THE DEFENDANT:  I have, your Honor.

10           THE COURT:  And do you understand what you've

11  been charged with in those two counts?

12           THE DEFENDANT:  Yes, your Honor.

13           THE COURT:  All right.  Do you want me to read

14  the charges to you out loud or do you waive the reading of

15  them?

16           THE DEFENDANT:  I waive the reading.

17           THE COURT:  All right.  I am required, however,

18  to remind you of the maximum possible penalty -- not the

19  guidelines, but the maximum possible penalty for each count

20  that you face, including any mandatory minimum penalty.

21      Could the government please remind Ms. Damatta as to

22  that information?

23           MR. KUROSAD:  Yes, your Honor.

24      As to Count 1, not more than five years imprisonment;

25  a fine not to exceed $250,000, or both fine and

imprisonment; not more than three years supervised release;

not more than two years imprisonment upon revocation of

supervised release; a $100 special assessment; and

restitution.

Count 2, not more than 12 months imprisonment; a fine

not to exceeds $100,000, or both fine and imprisonment; not

more than one year of supervised release; not more than one

year of imprisonment upon revocation of supervised release;

a $25 special assessment; and restitution.

THE COURT: All right. Now, Ms. Damatta, do you

understand the two charges against you in this case, as

well as the maximum punishment you face if convicted of

each of those charges?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. Mr. Gordon, were all

formal plea offers by the government conveyed to

Ms. Damatta?

MR. GORDON: They were, your Honor.

THE COURT: All right. Ms. Damatta, I've been

provided a document -- another document in your case. It's

a six-page document. It appears to be signed by you as

well as Mr. Gordon. It appears to be dated October the

11th. The document is entitled Memorandum of Plea

Agreement, and it appears from this document that it is

your intention to plead guilty to Count 2 of the

1    indictment.

2         Is that your intention, ma'am?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  All right.  Have you had --

5    Ms. Damatta, have you had an opportunity to read and to

6    discuss this plea agreement with your attorney, and did

7    you, in fact, do so before you signed it?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  Does the plea agreement,

10   Ms. Damatta, represent in its entirety any and all

11   agreements that thank you have with the United States and

12   the U.S. Attorney?

13        Let me ask it differently.  Are there any other

14   agreements, other than this one -- other than this plea

15   agreement -- are there any other agreements that you --

16             THE DEFENDANT:  No, your Honor.

17             THE COURT:  -- have with the United States or

18   the U.S. Attorney as it relates to this case?

19             THE DEFENDANT:  No, your Honor.

20             THE COURT:  All right.  Did you understand the

21   terms, the language, the words, the sentences, even any

22   legal phrases that are used in the plea agreement after you

23   discussed it with Mr. Gordon?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Do you understand that by entering

```
1   into this plea agreement and entering a plea of guilty that

2   you will have waived or given up your right to appeal or to

3   collaterally attack all or a part of your sentence?

4              THE DEFENDANT:  (No response.)

5              THE COURT:  The plea agreement contains an

6   appeal waiver as well as, perhaps, some restrictions on

7   other attacks you could have on the sentence that you may

8   ultimately receive from the Court in this case.  It's

9   contained in paragraph (c) on page 1 and 2 of the plea

10  agreement.

11       I just want to know whether you understand paragraph

12  (c) of the plea agreement?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  Okay.  Has anyone made any other or

15  different promises to you to get you to plead guilty in

16  this case, other than what's contained in the plea

17  agreement?

18             THE DEFENDANT:  No, your Honor.

19             THE COURT:  Has anyone threatened you in any way

20  to persuade you to either accept this plea agreement or

21  plead guilty in this case?

22             THE DEFENDANT:  No, your Honor.

23             THE COURT:  Are you pleading guilty of your own

24  free will because you are, in fact, guilty?

25             THE DEFENDANT:  Yes, your Honor.
```

```
1              THE COURT:  Do you understand that if you are

2    not a United States citizen, a plea of guilty might subject

3    you to deportation, exclusion or voluntary departure and

4    prevent you from obtaining U.S. citizenship?

5              MR. GORDON:  May I have a moment?

6         (Counsel conferring with the defendant.)

7              THE DEFENDANT:  I do, your Honor.

8              THE COURT:  Do you understand that?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Okay.  Now, do you understand,

11   Ms. Damatta, if I accept your plea of guilty this

12   afternoon, thank you may not be able to withdraw your plea

13   or have a trial in this case?

14             THE DEFENDANT:  I understand, your Honor.

15             THE COURT:  Have you answered all my questions

16   truthfully?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  All right.  Do you need any more

19   time either to think about your plea or to discuss your

20   case with Mr. Gordon before entering your plea?

21             THE DEFENDANT:  No, your Honor.

22             THE COURT:  All right.  Ms. Damatta, ma'am, how

23   do you plead to Count 2 of the indictment?

24             THE DEFENDANT:  Guilty.

25             THE COURT:  All right.  Now, Ms. Damatta, were
```

you, as the government has alleged in Count 2, on or about

November 8, 2016, in the Eastern District of North

Carolina, an alien, knowing you were not a United States

citizen, knowingly vote in an election held, in part, or

for the purpose of electing a candidate for the office of

President, Vice President and member to the House of

Representatives, in violation of Title 18 of United States

Code, Section 611(a).

Did you do all that?

THE DEFENDANT:  I did, your Honor.

THE COURT:  All right.  Thank you.

The government will provide the Court a factual basis

in support of Ms. Damatta's plea of guilty to Count 2 of

the indictment, telling the Court what the government

believes it could prove at a trial in this case.

MR. KUROSAD:  Yes, your Honor.  On May 8th,

2017, Homeland Security agents received documentation

related to the identity and voter list profile of those

presumed to be involved in voter fraud.  They received

voter fraud registration election activities for 136

subjects.

One of these voters were identified as the defendant,

a national and citizen of Panama, who currently holds an

immigration status as lawful, permanent resident in the

United States.

1        As a result of some grand jury subpoenas, information

2   came back that the defendant voter registration application

3   was signed by the defendant and dated September 7, 2016.

4   According to those records, the defendant possessed the

5   voter registration application on September 7, 2016, and

6   responded yes to the question, are you a citizen of the

7   United States of America.  And, in fact, she was not, and

8   the defendant voted in the election of 2016.

9              THE COURT:  That was the election for President,

10  Vice President, House of Representatives?

11             MR. KUROSAD:  That's correct, your Honor.

12             THE COURT:  Okay.  And, I'm sorry, where was

13  this in the Eastern District?  Wake County?

14             MR. GORDON:  New Hanover, your Honor.

15             THE COURT:  That was in New Hanover.  All right.

16  Mr. Gordon, do you care to respond to the government's

17  proffer?

18             MR. GORDON:  Briefly, your Honor, yes.  Thank

19  you.

20        Just to clarify, the elements as laid out on page 4

21  of the plea agreement, what I would like the record to make

22  clear is that the statute under which we're pleading does

23  not require knowledge that a noncitizen cannot vote.  So,

24  to address the -- calling this voter fraud, I think it's

25  more accurate to call it -- it's a strict liability

offense. The question is, are you a citizen; did you vote.

The government, at trial, would not be required to show a link between those two things. So, I think, for purposes of what we're pleading to, I'd just like the record to be clear on that.

THE COURT: The allegation in Count 2 is that the defendant knew she was not a United States citizen and did knowingly vote.

MR. GORDON: Your Honor, there are four of us in the office who had these cases, and Mr. Todd, not surprisingly, feels very, very strongly about the second element, and he's successfully, I believe, moved to strike that language.

I do not have as much of a problem with it as Mr. Todd does, because, again, I don't see that as, again, showing any linkage between the voting and, you know, knowledge of -- that you're a legal permanent resident, if I'm making myself clear on that. In other words, it doesn't require knowledge that noncitizens can't vote.

THE COURT: Okay. Are you -- are you -- you're not making a challenge to the factual basis, though; right?

MR. GORDON: We are not disputing that she is -- she is a legal permanent resident, so we are not disputing that she is not a citizen. We are not disputing that she voted in the last presidential election.

1          THE COURT: Okay. Is that right, Ms. Damatta?

2          THE DEFENDANT: Yes, your Honor.

3          THE COURT: Okay. Does the government want to

4 be heard on it? Anything that I need to be heard on it to

5 accept the guilty plea in this case?

6          MR. KUROSAD: No, I think Mr. Mr. Gordon handled

7 it appropriately.

8          THE COURT: Okay. All right. Well, I find that

9 Ms. Damatta -- well, in this case of United States America

10 versus Dora Damatta, 7:18-CR-133, I find that Ms. Damatta

11 is fully competent and capable of entering her informed

12 plea; that her guilty plea to Count 2 of the indictment is

13 being made knowingly and voluntarily, is supported by an

14 independent factual basis in each of the essential elements

15 of the offense charged. Ms. Damatta's plea is accepted.

16 She's hereby adjudged guilty of Count 2 of the indictment.

17       The Court hereby conditionally approves the plea

18 agreement in his case.

19       The parties will be notified in writing of the date

20 and the place of sentencing in this matter. As I've said

21 earlier, it's anticipated that sentencing will be at the

22 Court's April, 2019, term. And defense counsel is directed

23 to contact Probation before leaving Court today to arrange

24 a time to commence preparation of the PSR.

25       All right, anything further regarding Ms. Damatta's

1    case?

2                    THE DEFENDANT:  No, your Honor.  Thanks.

3                    THE COURT:  All right.  Ms. Damatta, just know

4    that you're still under obligation to follow the conditions

5    that the Court's imposed upon you already.

6         All right.  Thank you, very much.

7                    MR. GORDON:  Thank you, your Honor.

8         (Whereupon the proceedings concluded at 3:10 p.m.)

9                              *      *      *

10                          **CERTIFICATION**

11         I certify that the foregoing is a correct transcript

12    of the record of proceedings in the above-entitled matter

13    to the best of my skill and ability.

14

15    /s/ Harold M. Hagopian             June 2, 2019
          Court Reporter                      Date
16

17

18

19

20

21

22

23

24

25