UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION


UNITED STATES OF AMERICA,      -  Docket No. 7:18-cr-133
                               -
    Plaintiff,                 -  New Bern, North Carolina
                               -  April 11, 2019
         v.                    -  Sentencing
                               -
DORA MAYBE DAMATTA-RODRIGUEZ,-
                               -
    Defendant.                 -
--------------------------------

TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE LOUISE WOOD FLANAGAN
UNITED STATES DISTRICT JUDGE.

APPEARANCES:

For the Plaintiffs:  United States Attorneys' Office
                     By: Sebastian Kielmanovich
                     310 New Bern Avenue, Suite 800
                     Raleigh, NC 27601
                     (919) 856-4500

For the Defendant:   Federal Public Defender
                     By: Stephen C. Gordon
                     150 Fayetteville St., Suite 450
                     Raleigh, NC 27611-5967
                     (919) 856-4236

Court Reporter:      Tracy L. McGurk, RMR, CRR
                     413 Middle St.
                     New Bern, NC 28560
                     (419) 392-6626


Proceedings recorded by mechanical stenography,
transcript produced by notereading.

(Commenced at 2:42 p.m.)

THE COURT: We'll take up the last case on the afternoon docket, Dora Rodriguez.

MR. KIELMANOVICH: Good afternoon, Your Honor.

MR. GORDON: Good afternoon, Your Honor.

THE COURT: We don't need an interpreter, do we?

MR. GORDON: We do not, Your Honor.

THE COURT: You are here because you're an alien, and you voted in our election, and you will be sentenced for that.

Have you read the presentence report?

THE DEFENDANT: Yes.

THE COURT: Have you had enough time to talk with Mr. Gordon to be ready to be sentenced?

THE DEFENDANT: Yes.

THE COURT: This, like several other cases I've had before me, this occurred in Raleigh, North Carolina. It related to the last election for President. And you knew better, it's clear to me in reading through this. You knew you couldn't vote, but you said you could.

You have a criminal record: shoplifting, driving without the proper license, larceny. But the

age of the convictions renders them unscorable, so you find yourself in the Criminal History Category I.

Your family background is given to me, your health, your education, substance abuse issues all are discussed. I don't think you have any substance abuse issue. No. But your education, your employment history, your financial circumstances. All right. The total offense level is a 4.

The advice I receive is a sentence of zero to six months where you face not more than 12 months. Your behavior can be supervised for a year. You are eligible for probation. The fine could be as much as $100,000, though the guidelines suggest a range of between $500 and $9,500. And there's a $25 special assessment.

Mr. Kielmanovich, while I invite the defendant to be seated, I'd like to hear from you. What do you think in this case is the appropriate punishment?

MR. KIELMANOVICH: Your Honor, I believe that in this case the Court should consider a small active sentence, even if it's just 24 or 48 hours, a weekend, in jail. I'm making this request because when looking at the facts, the defendant knew that she shouldn't have voted. When she was interviewed by agents, she said that she may have checked the box that

she was a U.S. citizen on the form because she wanted to believe that she was a U.S. citizen.  I mean, she knew that she couldn't vote.

She further stated, and I quote, "Obama said any immigrant, legal or illegal, can vote."

This is not a case of somebody that comes and says:  I didn't know what I was signing; I don't speak the language.  I don't think that's excusable either.  But this is clearly a case -- the defendant is a citizen of Panama; she has a green card -- that she wanted to vote.  She knew she couldn't vote.

There is a process to become a U.S. citizen. You have to go through a background check; you have to pass a test; you have to qualify.  Fingerprints are taken.  There's an oath of allegiance.  There's a number of things that have to happen.  This is not something that you feel like I should have the right, and I deserve to do it.  Which it looks to me like this is what the defendant thought, that she could just do what she wanted to do.

When she was asked by agents if she voted, she said that it was in New Hanover County, that she voted for all the positions that were on the ballot.  So she has taken away the right of the electorate to exercise their voice to be heard by her not being a

citizen.

And I believe that this is just common knowledge all over the world, that you just don't get to go to other countries and vote, particularly in national elections, in elections in which the office of the President is on the ballot.

So for that reason, Your Honor, I would ask that you consider, even if it's a small sentence, that it be active because I think it needs to send a message that this defendant shouldn't have done this, and others should be deterred by this.

If the Court is not inclined to an active sentence, then I would ask that probation be imposed with a fine also to reflect the seriousness of the offense.

I'll leave it in your discretion, Your Honor.

THE COURT:  Mr. Gordon?

MR. GORDON:  Thank you, Your Honor.  Your Honor, I respectfully disagree with my good friend, Mr. Kielmanovich, on a few points.

She did talk about Obama saying that noncitizens could vote.  I don't know if the Court heard about this at the time.  I had not, but I subsequently have.

In 2016 before the election I guess an actress who I've not heard of -- she's an actress/rapper -- named Gina Rodriguez interviewed the President at the time, Barack Obama, and asked him -- she said: Many dreamers and immigrants, slash -- I call them citizens because in my mind that's what they are because they contribute -- are afraid that if they show up to vote that they'll be deported or their family will be deported. Is that true?

And the President answered: No, it isn't, because no one is entitled to look at -- inside the ballot box and look inside the vote.

That was picked up by especially the conservative media who's on Fox News a lot that the President said that immigrants could vote. If you Google it, if you Google Obama says immigrants can vote, you'll get a lot of hits. So it was something that did happen at the time, and that's what she was referring to, because she saw that video. And quite honestly, Your Honor, I watched the video. I had to watch it two or three times because my initial reaction is that was, in fact, what was said. It's just very confusing.

And Ms. Damatta is now 65. She has been here for 46 years. She has gone through a couple of abusive marriages, which -- she's a grandmother.

She has family here.  She has grandchildren, children here.  I really -- and she never voted before.  So she had never done this before.  And I quite honestly think had she fully appreciated this, she would never have put her status in this country at risk.

As the Court commented to the last defendant, she does view this as a high privilege to be in this country.  She really does.  And it's hard for me, having gotten to know her, to think that she would have put that at risk.

I can tell the Court she gets confused easily.  She does.  And I've looked at -- I've -- in fact, there is some indications in some of her medical records that there may be incipient dementia.  I don't know.  But from when the Board of Elections contacted her, she told the truth:  I'm not a citizen; I am not.

The cases I have done, one of the 3553 factors is the need for the sentence to be on a par with similarly situated defendants.  And to my knowledge there have been two defendants out of all these cases who have received jail sentences, and I think one was the woman who was actually registering people, I think was before this Court.  The other was, I guess, affirmatively informed that he could not vote and did anyway.  But the rest have been given probationary

sentences.

And I would just ask the Court that -- to make an example of her by incarcerating her, a 65-year-old woman, to send a message, I think the message is out. I think given these cases, which have been publicized, it has been written about in the Washington Post several times, with everything that's going on now in Bladen County, with the new -- especially I think with the new voter ID law, I think that's going to prevent this in the future. But I think the deterrent effect is out; the word is out on this. People know about this. So I think to -- again, to single her out for incarceration I don't think would be appropriate, and I would ask the Court not to do that. Thank you.

THE COURT: Does she want to say anything?

THE DEFENDANT: Yes, Your Honor. I wanted to say that I -- I was approached the year before elections at church by all different people trying to get me to register. And every time that they did, I had left my ID in the truck or something; I didn't have it, something, or I was in a hurry. And when I heard the President saying that I -- anybody could vote, I not consider I am a citizen really, but in a way, since I've been here most of my life, and at the time I had 15

grandkids -- I have 17 now, I thought that if I could vote, maybe my vote could change the future for my grandkids, because things were not working out right. So I was grateful to have the opportunity to vote. Not that I was harming anybody; that's not the way I look at it. Because I show my ID, my driver's license to the Board of Elections. And they read the back, what it says, that I am a permanent lawful resident. So I believe that that is -- it was okay.

And my children were even happy when I communicate that I had gotten okayed to vote. And they very, very happy for me because they knew how I felt about what was going on in the country, the country that is -- I wasn't born in, but the only country that I had lived since I'm an adult.

And I had never participated in any kind of elections in the country I was born, but I've always been here for all elections, and I never voted because I didn't think it was right, until the President said that it was okay. And I believe that everybody allow me to by not stopping me, by sending me a voter card.

Three weeks after they send me a voter card, and I walked into early voting, and they allow me to do this. I wasn't sneaking in. I believe I was doing it by the law.

And I'm sorry, like he said, that I took somebody else's vote. But that was not my intentions.

THE COURT: Well, you answered yes to the question: Are you a citizen of the United States of America?

THE DEFENDANT: Because they say that I -- I lived here, and I had five children in this country. I raised them.

THE COURT: You know that doesn't make you a citizen?

THE DEFENDANT: I know, ma'am. It was not a sneaky thing. It was the way I been described what a citizen is. It's not about -- and I had tried to become a citizen, but I had not been able to many times. Three times I had gone to Charlotte; I had paid, you know, the paperwork to get fingerprint. And I give fingerprint every ten years. I go through the whole process. And I been told by Immigration: Why don't you become a citizen? You don't have to go through all this. So it's not like -- see, I learn, I educated myself.

THE COURT: Well, you know you're telling me that repeatedly you were told that you were not a citizen by members of the Immigration?

THE DEFENDANT: Yeah. Because when I went to get my Green Card, every time I went to get my Green

Card they say: Just go and fill out the paperwork, pay some money, then I'll be fine; you don't have to do this anymore.

But, ma'am, it was when the President said that, maybe I got confused, but I was -- I had so much joy. I was so happy that I was finally -- maybe my vote could help my grandkids or my kids. I wasn't being sneaky. I wasn't cheating. I wasn't trying to ruin this country. I was trying -- honest to God, Your Honor, I know I did wrong, and I'm very sorry. And I'm not sorry because I got caught because when they came to my house, I wasn't scared. I told them exactly what happened.

THE COURT: Okay. Thank you very much.

MR. GORDON: May I add one fast thing?

I can assure the Court she understands now, you know, that regardless of what she may feel in her heart, she is not a citizen. And I can assure the Court she is not going to do this again as a legal permanent resident. I can assure the Court of that. This has been a very obviously stressful difficult experience for her. And I think she appreciates that what she did was not the thing to do at all.

I do find it ironic -- having done these cases, I do find it ironic that there are people who are

not citizens who are wanting to vote, when the large majority of the electorate who can vote don't exercise their right in so many elections. I wish it weren't that way. Thank you.

THE COURT: Did you want to say anything, or have I heard you?

MR. KIELMANOVICH: I think the defendant's statement it makes the case, Your Honor, for what I recommended to the Court. I think at the end I think she still -- she's happy that she voted. That's what she wanted to do. And there are rules. And citizenship is such an important right that we can't have people that just make the decision: I lived here long enough; I can get it if I want, but I don't have to get citizenship; I'll just go ahead and vote.

I'm not asking for a significant active sentence, but for a driving while impaired or other serious misdemeanors people spend 24 hours in jail. I think a right of this nature that has been violated requires some punishment that is consistent with the seriousness of the offense. And the vote has been counted. There's just no going back. And that is one of the things that I -- when I look at these cases realize that there's just no affecting what happened. And that's why the system has to work from the

beginning. And the system relies on the honesty of the applicant. There's no one that is checking the citizenship status of the applicant when registering to vote. It's a sworn statement. It's under penalty of perjury.

"A citizen of the United States: Yes or no?"

"If the answer is no, do not continue completing the form."

It cannot be more clear than that. And yet we're seeing this pattern repeat itself.

Ideally there should be perhaps a better system, way to confirm, but we trust people. Like when we ask, now that we're in the tax season, the taxpayer to send their forms. The Government trusts that most people will be honest. And we expect them to be. So voting is no different. It's a one-page form, and it's not as complex as a tax return. And this defendant breached the trust by doing so. Thank you, Your Honor.

THE COURT: I think she did it knowing that she wasn't authorized to vote. And I don't detect a lot of remorse here, though I appreciate Mr. Gordon's efforts to suggest there is. But I think she is very happy that she voted in that election and had the opportunity, as she says, to effect change.

All right.  Well, I'm ready to sentence you. I've considered the advice of the Guidelines specifically and generally and the factors set forth in 18, United States Code, Section 3553.  There's a need to discourage this type of conduct, to promote respect for the law, to protect the integrity of our elections.  And I'm sentencing you to 14 days in custody.  I think that's a sentence that's sufficient but not greater than necessary.

And I'm putting you on supervised release for a year when you come out of custody.  And during that time you're going to be, if appropriate, surrendered to an immigration official for deportation. I don't know if that's going to happen or not, but if you're ordered deported, you cannot come back into this country.  And you will consent to warrantless searches of your house, your person, your motor vehicle.

And you'll pay a $100 special assessment -- I think it's a $25 special assessment, and a $500 fine. I'm not going to put interest on top of that.

Pursuant to the plea agreement, Count One is now dismissed.  The fine is due immediately.  If you can't pay it immediately, 60 days out of prison you'll start paying it back at the rate of $50 a month.

All right.  I'll explain to you how you can

appeal in a moment.

Is there anything further, counsel?

MR. GORDON: Your Honor, could I first of all request she be given a reporting date? She drove herself here today. Her truck is here.

The other thing I'm concerned about is if there would be some way to fashion this that she perhaps spend the 14 days in lockup or something. I'm just concerned about her safety as an elderly woman.

THE COURT: I'm sure they'll take that into consideration. I'll just leave that to the Bureau of Prisons. It may well be that your request is what they adopt. But I just -- I'm going to leave it to them with confidence that they will do the correct thing.

MR. GORDON: Would they have the option of house arrest, or would the Court need to order that?

THE DEFENDANT: I don't think they would. I do, but I'm not.

MR. GORDON: May I have a moment, Your Honor?

(Discussion had off the record between the defendant and defense counsel.)

MR. GORDON: One final question. Would the Bureau of Prisons perhaps have the authority to have her serve it on weekends? Can they structure it that way?

Or does it have to be consecutive?

THE COURT: I'm getting outside of my area of knowledge. If I was to hazard a guess, I would guess no.

Whether the Bureau would designate a local jail as the place of confinement, I'm going to ask the Marshal; that's the only thing I can think of that might go on.

But is there anything else?

THE MARSHAL: From our prior experience, Your Honor, if it's under 30 days, they'll keep her in a local contractor; it will be a BOP-sanctioned contractor, perhaps Piedmont, Cumberland County. But they will assign her to a local jail.

MR. GORDON: Thank you, Your Honor.

THE COURT: That sounds reasonable.

How much time? Forty-five days to self-report?

MR. GORDON: May I have a moment, Your Honor?

(Discussion had off the record between the defendant and defense counsel.)

MR. GORDON: Your Honor, she said she would like to do this as soon as practicable so she can get it behind her. So I don't know.

THE COURT: Okay. Well, I will allow her to report to the prison when notified.

Ms. Tripp, does that require an amendment to the form?

THE CLERK: Yes, ma'am.

(Discussion had off the record.)

THE COURT: What's today, the 11th?

MR. GORDON: Yes.

THE COURT: I can say no sooner than tomorrow. I don't think it's going to happen that soon. I could put Monday.

MR. GORDON: Monday might be better. Thank you.

THE COURT: Could you come forward and collect the order of surrender.

MR. GORDON: May I approach, Your Honor?

THE COURT: Yes, sir.

MR. GORDON: May I approach, Your Honor?

THE COURT: Yes, sir.

Now, you can appeal if you think there's something really wrong with what has happened here, if you think there's something really wrong with the conviction or with the sentence, but you do need to move quickly. A defendant usually only has 14 days from the date that the judgment goes on the Court's docket. If

you cannot afford the cost of an appeal, you can apply for permission to appeal for free.  And if you request, the clerk will fill out the appeal paperwork for you.

Any questions?

THE DEFENDANT:  No, Your Honor.

THE COURT:  All right.  Thank you very much.

(Concluded at 3:07 p.m.)

- - -

**C E R T I F I C A T E**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Tracy L. McGurk_____                ___6/6/2019___

Tracy L. McGurk, RMR, CRR                      Date